**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **KRISTEN FITZHUGH, etc.,** | ) | **CASE NO. 1:11CV533** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **AMERICAN INCOME LIFE** | ) | |
| **INSURANCE COMPANY, et al.,** | ) | |
| **Defendants.** | ) | |


<u>**CHRISTOPHER A. BOYKO, J.**</u>:

This matter comes before the Court upon the Motion (ECF DKT #6) of Defendants,

American Income Life Insurance Company and Torchmark Corporation, to Compel

Arbitration and to Dismiss Entire Action or in the alternative, Dismiss Class Claims and Stay

the Remaining Proceedings. For the following reasons, Defendants' Motion is granted; the

parties will proceed to arbitration on Plaintiff's individual claims; and the captioned case is

dismissed in its entirety.

## I. FACTUAL BACKGROUND

Plaintiff, Kristen Fitzhugh ("Plaintiff"), a Lorain County, Ohio resident, was

employed as a sales agent with Defendant, American Income Life Insurance Company ("AIL"), from October 2009 through January 2011. AIL is a life insurance company headquartered in Waco, Texas and is a wholly-owned subsidiary of Defendant, Torchmark Corporation. In her Complaint, Plaintiff alleges Defendants violated the wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., by intentionally misclassifying her, and others similarly situated, as independent contractors instead of employees, to escape the minimum wage and overtime requirements of the FLSA. Plaintiff alleges the identical FLSA claims against both AIL and its parent, Torchmark, and seeks to hold them both jointly and severally liable. Defendants contend that Plaintiff's employment agreement with AIL contains a broadly-worded arbitration provision, precluding her from pursuing class action claims, as well as from bringing her individual claims in court. Plaintiff signed three contracts during her tenure with AIL, on October 8, 2009, March 25, 2010, and July 22, 2010. At the time of the execution of the October 2009 contract, Plaintiff also joined the Office and Professional Employees International Union Local 277, and authorized AIL to deduct union initiation fees and monthly dues from monies due to her. (ECF DKT #14-4).

Each of Plaintiff's contracts contains a clause captioned Relationship: "The [Supervising] Agent is not an employee of the Company; rather the [Supervising] Agent is an independent contractor." The Applicable Law and Venue clause in each contract recites: "This Agreement shall be construed in accordance with the laws of the State of Texas and suit brought for enforcement shall be in McLennan County, Texas, and in no other venue." Every agreement has a binding arbitration clause; and the July 2010 Agent Contract, which was in effect at the time Plaintiff's employment terminated, and for the majority of her tenure,

includes the following arbitration language:

> In the event of any dispute or disagreement arising out of or relating to this contract, the parties shall use their best efforts to settle such disputes. To this effect, they shall negotiate with each other in good faith to reach a just solution. If the parties do not reach a just solution by negotiation as described above, the Agent agrees to utilize the grievance process as outlined in the OPEIU Local 277 agreement. If the dispute is not settled through the grievance process, then upon written notice by either party to the other, all disputes, claims, questions, and controversies of any kind or nature arising out of or relating to this contract shall be submitted to binding arbitration pursuant to the provisions of the collective agreement with OPEIU. The findings of the arbitrator shall be final and binding on all parties and their beneficiaries, successors, assigns or anyone claiming an interest in the contract.

Plaintiff asserts that the arbitration provision is invalid. She argues the arbitration clause references "some obscure 'grievance process' with a Labor Union of which Plaintiff had no prior history or knowledge." (ECF DKT #12 at 3). She claims she never received the collective bargaining agreement nor any material explaining the grievance process. She asserts that she has no experience or training preparing her for the process, or for waiver of her constitutional right to a jury trial. Further, she had little time to review the July 2010 contract or to consult with a lawyer. She contends the jury waiver was not clear and unambiguous; nor was it supported by sufficient consideration. According to Plaintiff, the arbitration clause is invalid in that it does not allow effective vindication of her statutory claim; and there is no showing that the parties intended to waive collective action treatment of FLSA claims. Lastly, Plaintiff admits signing a contract with AIL on March 25, 2010; but insists the signature on the copy submitted by Defendants is a forgery.

## II. LAW AND ANALYSIS

## Operative Contract

The Court agrees that a factual dispute is created by Plaintiff's assertion that her signature on the March 2010 contract is a forgery. Defendants retained a handwriting expert to opine on the authenticity of the signature; yet the opinion is limited since Defendants have only copies, and not originals, of any of the Plaintiff's agreements with AIL. Nonetheless, the Court need not spend time considering the forgery issue as to the March 2010 document. Rather, the Court will focus on the July 2010 contract, which Plaintiff admits supplanted the questionable document and was in effect for the time period relevant to her Complaint.

## Contract Construction

Each agreement between Plaintiff and Defendant AIL, including the July 2010 contract, contains a choice of law provision, calling for the application of Texas law. "In construing a written contract, the primary concern is to ascertain and give effect to the parties' intentions as expressed in the document." *Mastec North America, Inc. v. El Paso Field Services*, 317 S.W.3d 431, 446 (Tex.App.2010) (citing *Frost Nat'l Bank v. L & F Distribs., Ltd*, 165 S.W.3d 310, 311-12 (Tex.2005)). "We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement." *Id.* "We give terms their plain, ordinary and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Id.* (citing *Heritage Res. Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996)). "If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous, and we construe it as a matter of law." *Frost Nat'l Bank*, 165 S.W.3d at 312.

**The Federal Arbitration Act ("FAA") 9 U.S.C. §§ 1,** *et seq.*

The FAA provides that an arbitration clause in a "transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2003). The FAA further mandates that when the Court is "satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (2003). The FAA establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. See *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). "A central purpose of the FAA is 'to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts.'" *In re Olshan Foundation Repair Company, LLC*, 328 S.W.3d 883, 891 (Tex.2010) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

The FAA requires courts to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Yet, arbitration clauses are subject to the same defenses or bars as other contract provisions. 9 U.S.C. § 4 (2003). The Court must ascertain whether the parties agreed to arbitrate the dispute at issue. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). A party cannot be required to arbitrate any dispute if the party has not agreed to do so. *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582 (1960). The FAA does not confer an absolute right to compel arbitration, but only a right to obtain an order directing that "arbitration proceed in the manner

provided for in [the parties'] agreement." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 469 (1989). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Gilmer*, 500 U.S. at 26.

Once a court determines a suit is referable to arbitration under the terms of a written agreement, the matter shall be stayed "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (2003). However, it may be appropriate, in certain circumstances, to dismiss a case rather than stay the proceedings. *Stachurski v. DirecTV, Inc.*, 642 F.Supp.2d 758, 764 (N.D.Ohio 2009). "If all the claims in the case are within the scope of the arbitration agreement and 'there is 'nothing left for the district court to do but execute judgment,' dismissal [of the case] is appropriate.'" *Stachurski, id.* (citing *Ewers v. Genuine Motor Cars, Inc.,* No. 1:07 CV 2799, 2008 WL 755268, at *7 (N.D.Ohio Mar. 19, 2008)) (quoting *Arnold v. Arnold Corp.-Printed Communications for Business,* 920 F.2d 1269 (6th Cir.1990)).

In determining whether to grant motions to dismiss or stay proceedings and compel arbitration, courts must apply a four-pronged test: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be arbitrated; and (4) whether to stay the remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000).


**Enforceability**

Applying Texas law pursuant to the parties' contractual choice, the Court finds that unconscionable contracts are rendered unenforceable in that state. *In re Olshan*, 328 S.W.3d at 892; *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex.2008). Moreover, Texas recognizes both substantive and procedural unconscionability; and both must be present in order to invalidate an arbitration agreement. *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex.2002). "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex.2006). Nevertheless, since arbitration is favored under federal and state law, courts "should be wary of setting the bar for holding arbitration clauses unconscionable too low." *In re Olshan*, 328 S.W.3d at 892.

**Procedural unconscionability**

Absent fraud, misrepresentation, or deceit, an arbitration agreement is not procedurally unconscionable, and will bind the parties, regardless of whether they read it or thought it had different terms. *In re McKinney*, 167 S.W.3d 833, 835 (Tex.2005).

In her Affidavit (ECF DKT #12-1), Plaintiff states that, when she started working for AIL in October of 2009, she received no instruction when she was provided the packet, containing an Agent Contract, employment application, and a union application, except to take them home and return the executed copies on the first day of training. (¶¶ 3-5). She was not instructed on the Local 277 OPEIU arbitration rules nor told how to obtain a copy. (¶ 7). Yet, she does not aver that she asked any questions about the union grievance process. She swears she "was never explained any aspect of these 'Agent Contracts,' never advised that

[she] could consult with an attorney regarding them, never advised whatsoever regarding any arbitration provision, nor advised of any opportunity to revoke a waiver of [her] right to a jury trial for any dispute." (¶ 12). Admittedly, Plaintiff took the employment packet home; however, she makes no mention of seeking an attorney's counsel, nor of asking for additional time to do so. She signed two more contracts in March and July of 2010, and they each contain arbitration clauses; but there is no evidence that she inquired about the arbitration procedure or that she was denied answers. Plaintiff holds a bachelor's degree in Journalism and has been licensed by the State of Ohio as an insurance agent. (¶ 13). Therefore, she is "legally held to have known what words were used in the contract, to have understood their meaning, and to have comprehended the legal effect of the contract." *In re Border Steel*, 229 S.W.3d 825 (Tex.2007); *In re McKinney*, 767 S.W.3d at 835; *Jean v. The Stanley Works*, 2008 WL 2778849, *12 (N.D.Ohio July14, 2008) ("person who signs a contract providing for arbitration without reading it is bound by its terms"). In any event, the particulars of the union grievance process are not significant. According to the terms of the arbitration provision at issue, if good faith negotiations fail and the union procedure is unsuccessful (or even disregarded), the parties' dispute must be submitted to binding arbitration. Plaintiff has failed to meet her burden of producing evidence of fraud, deceit, misrepresentation or undue influence in the circumstances surrounding her execution of the arbitration clause in three separate employment contracts with AIL.

**Substantive unconscionability**

Although not one of her primary arguments, Plaintiff discusses the fact that OPEIU Local 277 is located in the State of Texas, which could cause her significant expense and

inconvenience.  Defendants agree, however, that the arbitration can take place in Cleveland and that they will pay the arbitration costs.  (ECF DKT #14 at 13).

Plaintiff asserts that the arbitration provision is unconscionable because it lacks a clear and informative waiver of her constitutional right to a jury trial.  This assertion is unavailing. "In enacting [FAA 9 U.S.C. § 2], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."  *Southland Corp. v. Keating*, 465 U.S.1, 10 (1984).  By the very nature of arbitration agreements, an express waiver of a jury trial is unnecessary.  That is to say, "a party who enters an arbitration agreement necessarily consents to the clear and obvious consequence: the surrender of his right to go to trial." *Cooper v. MRM Investment Co.*, 367 F.3d 493, 508 (6th Cir.2004).

Plaintiff further contends that the arbitration provision is invalid because it does not allow for the full and effective vindication of her claim under the federal statute, the FLSA. Under the FLSA, a plaintiff is entitled to bring a collective action, which similarly situated employees may *opt in* to joining, with the availability of a three-year statute of limitations, and with the possible recovery of attorney's fees, if successful.  However, even these very unique statutory remedies can legally be waived.   "The Supreme Court has repeatedly held that contracts to arbitrate federal statutory claims are enforceable unless 'Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'"  *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000).  The Sixth Circuit has found FLSA claims to be arbitrable as a matter of law.  *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 377 (6th Cir.2005).  As to "statutory class action rights, ***it is***

*Plaintiffs' burden to show that Congress intended such rights to be non-waivable* ..."

*Burden v. Check into Cash of Kentucky, LLC*, 267 F.3d 483, 492 (6th Cir. 2001), cert. denied,

535 U.S. 970 (2002).  (Emphasis added).  Once again, Plaintiff has not satisfied her burden.

Plaintiff additionally asserts that the arbitration provision is not supported by

sufficient consideration.  "Arbitration agreements, like other contracts, must be supported by

consideration.  Such consideration may take the form of mutual promises to arbitrate.

Further, when an arbitration clause is part of a larger, underlying contract, the remainder of

the contract may suffice as consideration for the arbitration clause."  *In re Palm Harbor*

*Homes*, 195 S.W.3d at 676.  On three separate occasions, Plaintiff signed employment

contracts containing an arbitration provision.  The arbitration obligation was equally binding

on both Plaintiff and AIL in every case; and, moreover, each contract contained a schedule for

payment of the Agent's commissions.  The Court finds that there was sufficient consideration

to render the arbitration clause enforceable.

It bears repeating, that Plaintiff is a college-educated individual, with experience in

the business world.  The Court cannot, then, find the contract so one-sided in favor of the

corporate Defendants as to make it invalid.

Finally, Plaintiff maintains that if the arbitration clause in her July 2010 contract is

held enforceable, then this case should be arbitrated as a class/collective action.  Plaintiff's

position, however, flies in the face of the recent pronouncement of the United States Supreme

Court in *A T & T Mobility LLC v. Concepcion*, — U.S.— , 131 S.Ct.1740 (2011).  "The

overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the

enforcement of arbitration agreements according to their terms so as to facilitate streamlined

proceedings. Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id*. at 1748. The Supreme Court also looked back to its decision in *Stolt-Nielsen, S.A. v. Animal Feeds Int'l Corp.*, 130 S.Ct. 1758 (2010). There, the Supreme Court held: "[T]he agreement at issue, which was silent on the question of class procedures, could not be interpreted to allow them because the 'changes brought about by the shift from bilateral arbitration to class-action arbitration' are 'fundamental.'" *Id*. at 1776. In Plaintiff's July 2010 employment agreement, the arbitration provision is silent on the question of class or collective arbitration. Thus, following the guidance of *Concepcion*, Plaintiff's class/collective action claims must be dismissed; while the remainder of the case is referred to arbitration.

### III. CONCLUSION

Based upon the foregoing facts and applicable law, the Court determines that Plaintiff, Kristen Fitzhugh, and Defendants, AIL and Torchmark, agreed to arbitrate the within FLSA claims,  pursuant to the broadly-worded provision in the July 2010 employment contract, covering "all disputes, claims, questions, and controversies of any kind or nature arising out of or relating to this contract."  Moreover, the United States Supreme Court has repeatedly emphasized its belief that an arbitration forum adequately preserves statutory rights, and can satisfactorily adjudicate statutory claims, including those arising out of employment situations. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); *Green Tree Fin. Corp.*, 531 U.S. at 90; *Gilmer*, 500 U.S. at 35.  Plaintiff has not satisfied her burden of demonstrating that her claims are unsuitable for arbitration or that the arbitration provision is unconscionable.  Finally, the Court finds that all of Plaintiff's individual claims

(class/collective action-based claims excluded) against AIL and Torchmark, are subject to binding arbitration; and there is nothing left before this Court except to execute judgment. *Stachurski*, 642 F.Supp.2d at 764.

Therefore, Defendants' Motion (ECF DKT #6) is granted; the parties will proceed to arbitration on Plaintiff's individual claims; and the captioned case is dismissed in its entirety.

**IT IS SO ORDERED.**

**DATE: November 3, 2011**

**S/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**